IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAMES MADDEN, INDIVIDUALLY AND AS THE FATHER AND REPRESENTATIVE OF THE ESTATE OF RASHAD MADDEN AND SHABREEKA KENNEDY AS NEXT FRIEND OF MINOR CHILD, M.M. | § § § § § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 21-CV-01168 |
| v. | § § § | JURY TRIAL DEMANDED |
| JASON GRIBBON, DUDLEY NOSWORTHY, OTHER JOHN DOE DALLAS POLICE OFFICERS AND THE CITY OF DALLAS, TEXAS, | § § § § § § | |
| Defendants. | § | |

## **PLAINTIFFS' SECOND AMENDED COMPLAINT**

NOW COMES James Madden, Individually and as father and representative of the estate of Rashad Madden and Shabreeka Kennedy as Next Friend of minor child, M.M., complaining of Defendants, the City of Dallas, Texas, by and through its agents and servants, Jason Gribbon; Dudley Nosworthy; and other John Doe Dallas police officers individually, and for cause would show the Honorable Court as follows:

**I.**

**NATURE OF THE ACTION**

1. This is an action brought by the Plaintiffs against Defendants, the City of Dallas, Texas, more particularly the Dallas Police Department and Jason Gribbon ("Gribbon"); Dudley

PLAINTIFFS' SECOND AMENDED COMPLAINT

1

Nosworthy ("Nosworthy"); and other John Doe officers for their use of excessive and deadly force resulting in the unlawful tasing death of Rashad Madden ("Madden") under the color of law in violation of his individual rights under the Fourth Amendment of the United States Constitution and in violation of his civil rights pursuant to 42 U.S.C. § 1983.

2. Plaintiffs allege that the City of Dallas, Texas ("City of Dallas") and its policy makers, specifically the Dallas City Council, Mayor Michael Rawlings ("Rawlings") and former Police Chief David O. Brown, Chief of Police Renee Hall ("Hall") (collectively referred herein as the "Policymakers") failed to properly train, supervise, screen, discipline, transfer, counsel or otherwise control officers who are known, or who should have been known, to engage in the use of excessive force and/or deadly force, including those officers repeatedly accused of such acts. The Policymakers, specifically the Dallas City Council, Mayor Rawlings and Chief of Police Hall had a duty, but failed to implement and/or enforce policies, practices and procedures for the DPD that respected Rashad Madden' constitutional rights to assistance and protection. Including, but not limited to, Dallas Police Department General Order 907.04, 907.05, and 907.6 which explicitly prohibit two or more certified electronic control weapon users from intentionally deploying their conducted energy devices simultaneously at the same subject at the same time. Defendant City of Dallas and its Policymakers, specifically the Dallas City Council, Mayor Rawlings and Chief Hall's failure to adequately supervise and discipline Defendant officers, and possibly others, implement the necessary policies and the implementation of unconstitutional policies caused Rashad Madden' unwarranted and excruciating physical and mental anguish and death. Defendant officers consciously disregarded the rights of Plaintiffs and Madden, knowing that the Policymakers would approve and/or ratify their actions. For these civil rights violations and other causes of action discussed herein, Plaintiff seeks answers andcompensation for damages and the

PLAINTIFFS' SECOND AMENDED COMPLAINT

wrongful death of Rashad Madden.

## II.

## **PARTIES**

3. Plaintiff James Madden is a person of full age majority and a resident of Dallas, Dallas County, Texas. James Madden sues on behalf of himself individually and as representative of the Estate of Rashad Madden.

4. Plaintiff Shabreeka Kennedy is a person of the full age of majority and a resident of Dallas, Dallas County, Texas. Shabreeka Kennedy sues on behalf of her minor child M.M.

5. Defendant Officer Jason Gribbon; is an individual who may be served at the Dallas Police Department at 1400 Botham Jean Blvd., Dallas, Texas 75215 or wherever he may be found. He is being sued in his individual and official capacity as an employee of the Dallas Police Department.

6. Defendant Dudley Nosworthy; is an individual who may be served at the Dallas Police Department at 1400 Botham Jean Blvd., Dallas, Texas or wherever he may be found. He is being sued in his individual and official capacity as an employee of the Dallas Police Department.

7. Defendants, Dallas Police Department John Doe Officers, are individuals who may be served at the Dallas Police Department at 1400 Botham Jean Blvd., Dallas, Texas or wherever they may be found. They are being sued in their individual and official capacities as employees of the Dallas Police Department.

8. Defendant the City of Dallas, Texas is a municipality located in Dallas County, Texas. The City of Dallas operates the Dallas Police Department ("DPD").   The City of Dallas funds and operates the DPD, which, along with the Dallas City Council, the Dallas City Manager, former Mayor Rawlings, Current Mayor Eric Johnson, former Police Chief Hall, and current Police

Chief Eddie Garcia are and were responsible for the implementation of the police department's budget, policies, procedures, practices, and customs, as well as the acts and omissions, challenged by this suit. The DPD is also responsible for preventive, investigative, and enforcement services for all citizens of The City of Dallas. The City of Dallas may be served with citation herein by and through its Mayor Eric Johnson at 1500 Marilla Street, Dallas, Texas 75201 or anywhere he may be found.

### III.

### JURISDICTION AND VENUE

9. Jurisdiction exists in this court pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is brought under, inter alia, the Fourth Amendment of the United States Constitution and 42 U.S.C. §1983, to redress the deprivation of rights, privileges and immunities guaranteed to decedent Rashad Madden, by constitutional and statutory provisions. Plaintiffs further invoke the supplemental jurisdiction of this court pursuant to 28 U.S.C. § 1367 to adjudicate pendent claims arising under the laws of the State of Texas.

10. Venue is proper in this court because the causes of action occurred within the Northern District of Texas.

### IV.
### FACTS

11. On May 28, 2019 at approximately 7:50 p.m., Rashad Madden allegedly walked on to the property of an auto dealership located at or near 7525 C F Hawn Service Road, Dallas, Texas, 75217 and was allegedly involved in a verbal confrontation with the business owner of the auto dealership. Dallas police officers responded to a 911 call from the business owner of the auto dealership, in which he states during the 911 call that Rashad Madden had a firearm pointed at his

PLAINTIFFS' SECOND AMENDED COMPLAINT

4

own neck and crawled under a van in the parking lot of the auto dealership. Per the Dallas police department incident report CAD 10-1010517; officers T. Foster#11272 and D. Nelson#11240 arrived upon the scene first and witness Madden underneath the white fan holding a handgun. The incident report states in the unredacted portions that Sgt. D. Nosworthy #5882, and Officers O. Arias #10849; L Fillmore #11467; S. Mulrean #10988; J Rayas #9694; and suspect Dallas Police Officer J. Gribbon #10116 arrived shortly after. There are several sections from the incident report that are redacted leading up to the point where the incident occurred, however, from the unredacted portions, the report states that a taser was fired by Sgt. Nosworthy or another unknown officer simultaneously at Rashad Madden at the same time as another officer was tasing Rashad Madden at the scene. In addition, at or about the same time Rashad Madden is being tased simultaneously, the report is unclear due to the heavy redacts, but it appears that Officer Gibbon may have also fired his service weapon at or near the area in close to Rashad Madden. The incident report fails to show how many times Madden was tased or who tased Madden prior to Nosworthy tasing Madden and prior to Gibbon firing a shot with his service weapon that missed Madden.

12.   Madden was eventually apprehended from under the white van and taken into custody. Officer stated in their report that Madden was having a reaction to drug usage or overdose as the reason he was transported to the hospital, however, nowhere in Madden's medical records does it show he had any legal or illegal drugs in his system at the time he was admitted.

13.   Per medical records Madden was transported to Baylor hospital for cardiac arrest, seizure RT Pneumothorax, and other severe medical complications directly related to the tasing. Maddens symptoms at the time of admission were directly consistent with known effects of tasing and more specifically excessive tasing. Medical records show that Madden was tased at least twice if not more as his medical records indicate multiple taser puncture wounds. Madden continued to

PLAINTIFFS' SECOND AMENDED COMPLAINT

suffer severe physical and emotional trauma due to the excessive tasing and eventually passed away on July 28, 2019. Madden was not released from the hospital from the time he was admitted on May 28, 2019 to the date he passed on July 28, 2019.

14. At the time Madden was excessively tased he was under a van in a weak and feeble position and was not a threat to himself or others. Officers could have apprehended Madden using less-force, especially because there were at least six officers surrounding the van. Instead of using less-force officers chose to tase Madden repeatedly and simultaneously and officer Gribbon even attempted to kill Madden when he fired his service weapon.

15. As a result of Defendant Officers' deadly and unlawful attack on Madden, James Madden and M.M. sustained multiple injuries having to witness Madden's painful and brutal death which occurred a two-month period.

16. The City of Dallas, the DPD and the Policymakers knew the risk of tasing and especially excessive tasing as a result of simultaneous tasing, and still provided officers with tasers, knowing of their risk of death and serious bodily injury.

17. Defendant, the City of Dallas has a longstanding record of not providing DPD officers with adequate training and not preventing excessive force claims by Dallas Police officers so severe that the Dallas Police Department had to address and respond for its uncivil resistance philosophy. Plaintiffs incorporates the Dallas Police Department 2019 Annual Report in response thereto The Dallas City Council and the City Manager of Dallas had in fact delegated policy-making authority to Chief Hall, giving her the responsibility for setting annual tasing training policies and knew that there were training issues which resulted in the killing of Madden. As a result of the lack of training and the official custom or policies of the DPD, Defendant Officers'

PLAINTIFFS' SECOND AMENDED COMPLAINT

6

inadequate training resulted in the death of Madden.

18. The city of Dallas failed to provide adequate training Defendant Officers in the use of deadly force and less than lethal force and violated its owner procedure by allowing its officers to simultaneously tase Rashad Madden while he laid helplessly under an immobile vehicle.

19. The City of Dallas failed to provide adequate training to Defendant Officers on proper arrest and confrontation techniques.

20. The City of Dallas failed to provide adequate training to Defendant Officers on appropriate methods and techniques to control situations similar to the one on May 28, 2019.

21. The defendants knew or should have known that the training provided to Officers were inadequate or nonexistent.

22. At the time tasers and a shot were fired Madden posed no threat of imminent death or great bodily harm to himself, Defendant Officers, or any other person in the immediate area. There is no evidence that Defendant Officers or others reasonably feared for their lives.

23. At the time Defendant Officers fired their tasers and service weapon, Madden had not pointed a gun at himself or in the directions of officers or any other bystanders.

24. Defendant Officers' unlawful and unwarranted acts, lack of training and the official customs or policies of the City of Dallas caused Madden's wrongful death and the injuries suffered by James Madden and M.M.

25. Plaintiffs would show that at all times material hereto, Defendant Officers were acting under the color of law when they tased Madden excessively, which led to his unfortunate death two-months later.

PLAINTIFFS' SECOND AMENDED COMPLAINT

7

26. Moreover, no reasonably competent official would have concluded that the actions of Defendant Officers described herein would not violate Maddens' constitutional rights. In other words, no reasonably prudent police officer under similar circumstances could have believed that Defendant Officers conduct was justified.

27. There is no evidence that Defendant Officers or anyone else were in danger of imminent death or great bodily harm. There were no struggles that would indicate that the use of excessive and/or deadly force was justified.

28. Madden posed no risk to Officers or any other person in the immediate area at the time he was tased and shot at and Madden did not attempt to harm himself or officers at the time the excessive force was utilized.

29. Defendant Officers unlawful and unwarranted acts, lack of training and the official customs or policies of the DPD caused Plaintiffs' injuries. As a direct and proximate result of the Defendants' conduct, Plaintiffs has sustained substantial damages and pecuniary loss.

30. Madden was twenty-nine (29) years old when he was murdered by Defendant Officers. Madden was gainfully employed at the time of his death, had a daughter, and a loving family. He was extremely helpful to his family and an active father.

31. Maddens' Father has suffered pecuniary loss from the ***death*** of his son by virtue of the destruction of the parent-child relationship, including the right to love, affection, solace, comfort, companionship, society, emotional support, and happiness. His Father will suffer anguish, grief, and sorrow as a result of his son's ***death*** and is likely to continue to suffer for a long time in the future. For these losses, Plaintiffs seeks damages in a sum in excess of the minimum jurisdictional limits of the court.

32. Upon information and belief, the City of Dallas has not implemented policies and

PLAINTIFFS' SECOND AMENDED COMPLAINT

procedures to aggressively curtail death and/or injuries as a result of the improper use of deadly force and have not disciplined officers involved in a cover-up of a crime.

## **EXCESSIVE FORCE BY DEFENDANTS (Individually and in their official capacities)**
## **COUNT 1 - 42U.S.C. § 1983**

33. Plaintiff incorporates by reference paragraphs 1 through 32 as if fully set forth herein and the Dallas Police Department General Order and violation thereto. Plaintiffs would show that Defendant Officers' actions on the occasion in question were wrongful, malicious, and reckless in depriving Madden of his constitutional rights, as alleged more fully below.

34. Plaintiffs would show that at all times material hereto, Defendant Officers had a duty to avoid infliction of unjustified bodily injury to Madden, to protect his bodily integrity and to not trample on his constitutional rights.

35. Plaintiffs would show that Defendant Officers failed to act as a reasonable officers would have acted in the same or similar circumstances. That is, Defendant Officers, without justification and the need to do so, used excessive and deadly force as described above and killed Madden without legal justification. Madden never made any threatening gestures toward Defendant Officers and did not pose an immediate threat to the safety of Defendant Officers, himself, or others.

36. Defendant Officers were not provoked when they fired tasers and a shot from a service weapon while Madden was under a van and did so for no lawful or justifiable reason. Madden died as a result of being tased excessively. The excessive and deadly force used by Defendants was not reasonable, justified nor was it necessary under the circumstances.

37. Defendant Officers' actions were not objectively reasonable because they followed a procedure designed to inflict excessive and deadly force in restraining individuals in a non-life-

PLAINTIFFS' SECOND AMENDED COMPLAINT

9

threatening situation.

38. Plaintiffs would show that Defendant Officers denied Madden his right to be free from the use of excessive force in violation of the Fourth Amendment to the United States Constitution.

39. The force used by Defendant Officers was unnecessary, excessive and unreasonable under the circumstances, and in direct violation of its own policies and procedures as Madden did not pose an immediate threat to the safety of Defendant Officers, himself or others and the use of such excessive and deadly force was unnecessary. Defendant Officers embarked on a willful, malicious, reckless and outrageous course of conduct

that was intended to cause and, in fact, caused Madden to suffer extreme and severe mental and emotional distress, agony and anxiety.

40. As a result of these Constitutional violations to Madden and the injuries he sustained, Plaintiffs seeks compensation as set forth more specifically in the section of this Complaint entitled "Damages."

## **FAILURE TO TRAIN BY THE CITY OF DALLAS**
## **COUNT II 42 U.S.C. § 1983**

41. Plaintiffs incorporates regarding paragraphs 1 – 40 and the Dallas Police Department General Order and violation thereto as if fully set forth herein. Priorto May 28, 2019 the Dallas Police Department knew or should have known that Defendant Officers exhibited a patterns of escalating encounters with the public.

42. Defendant Officers and other officers at the scene of the tasing incident were acting under color of law and acting pursuant to customs, practices and policies of the City of Dallas and

PLAINTIFFS' SECOND AMENDED COMPLAINT

the DPD in regards to the use of deadly force and less than deadly but excessive as authorized and/or ratified by the Policymakers, specifically the Dallas City Council, Mayor Rawlings and Chief Hall. Madden was deprived of rights and privileges secured to him by the United States Constitution and by other laws of the United States, by the City of Dallas failing to provide proper training, adequate supervision, or discipline in dealing with individuals such as Madden in violation of 42 U.S.C. §1983 and related provisions of federal law and in violation of the above cited constitutional provisions.

43. With respect to the claims made the basis of this lawsuit, the City of Dallas and the City of Dallas failed to adequately train its officers on how to deal with individuals in Madden's situation including the explicit instructions prohibiting the simultaneous tasing by two or more officers. The failure to train its officers in a relevant respect reflects a deliberate indifference to the City of Dallas, the Dallas City Council, Mayor Rawlings, and Chief Hall to the rights of the City's inhabitants andis actionable under 42 U.S.C. § 1983.

44. Defendant the City of Dallas under the direction of the Dallas City Council, Mayor Rawlings and Chief Hall developed and maintained a policy of deficient training of its police force in the use of force, including the proper use of deadly force and dealing with individuals during events of this nature. The DPD's training was designed and implemented by Chief Hall under the direction of the City Manager and/or the Dallas City Council, to act in this regard.

45. The Dallas City Council, Mayor Rawlings and Chief Hall's failure to provide adequate training to its officers on how to deal with individuals during events or investigations of this nature and the subsequent use of excessive and deadly force reflect deliberate indifference by the Policymakers and reckless and conscious disregard for the obvious risk that officers would use excessive or deadly force on citizens and made the violations of Madden' constitutional rights,

PLAINTIFFS' SECOND AMENDED COMPLAINT

including his death, areasonable probability.

46. Plaintiffs would show that Defendant Officers' actions were the result of, or within the scope of, wrongful and reckless customs, policies, practices and/or procedures for which the City of Dallas, specifically the Dallas Police Department and Chief of Police Hall under the direction of the Dallas City Council knew or should have known but never provided the requisite and proper training.

47. On information and belief, Defendant the City of Dallas, acting through official policies, practices, and customs, and with deliberate, callous, and conscious indifference to the constitutional rights of Madden failed to implement and/or enforce the policies, procedures; and practices necessary to provide constitutionally adequate protection and assistance to Madden during his struggle to survive and implemented policies, procedures, and practices which actually interfered with or prevented with or prevented Madden from receiving the protection, assistance and care he deserved.

48. For instance, the following conduct, policies, and customs, *inter alia*, by Defendants violated Madden' constitutional rights:

a. the City of Dallas and DPD's failure to adequately train, supervise or discipline its officers who commit a wrongful act or attempt to cover-up a wrongful act of a fellow officers;

b. Defendants' policy on the proper use of deadly force and less than deadly force;

c. Defendants' violated its own policies and procedures against two or more officers tasing the same individual simultaneously

d. Defendants' inadequate training on how to deal with individuals during a raid of an event similar to the event that led to Madden's death;

e. Using deadly force against Madden while in a weak, feeble, and harmless position;

f. Using deadly force against Madden although he caused no immediate threat;

49. In addition, Defendant City of Dallas and the DPD, as applicable, failed and refused

PLAINTIFFS' SECOND AMENDED COMPLAINT

12

to implement customs, policies, practices or procedures, and failed to train its personnel adequately on the appropriate policies, practices or procedures regarding the proper use of deadlyforce. In so doing, Defendant City of Dallas knew that it was acting against the clear dictates of current law, and knew that as a direct consequence of their deliberate decisions, the very situation that occurred -- *i.e.*, Madden' death-- in all reasonable probability would occur.

50. The City of Dallas' failure to properly train and discipline its deputies was the proximate cause of the violations of Madden' constitutional rights.

## **FAILURE TO ADEQUATELY SUPERVISE OR DISCIPLINE AND RATIFICATION CLAIM**

### **COUNT III**

51. Plaintiff incorporates by reference paragraphs 1 through 50 as if fully set forth Herein and the Dallas Police Department General Order and violation thereto.

52. On Plaintiffs' governmental liability claim against the City of Dallas for failing to supervise or discipline its officers for prior violations and the resulting lack of supervision:

    a.    the City of Dallas failed to adequately supervise and/or discipline its employees in handling usual and recurring situations with which they deal;

    b.    the City of Dallas was deliberately indifferent to the need to supervise and/or discipline its officers and/or employees adequately; and

    c.    the failure to adequately supervise and/or discipline its officers proximately caused the deprivation of Rashad Madden' constitutional rights.

53. As a direct and proximate result of the City of Dallas's failure to adequately supervise or discipline its officers, Plaintiff has suffered damages.

## PUNITIVE/EXEMPLARY DAMAGES

54. Plaintiff incorporates by reference paragraphs 1 through 53 as if fully set forth herein. Additionally, and in the alternative, the conduct of Defendant Officers was done with malice. As such, Plaintiffs requests punitive and exemplary damages to deter this type of conduct in the future. In the alternative, such heedless and reckless disregard of Madden's rights, safety and welfare is more than momentary thoughtlessness, inadvertence or misjudgment. Such unconscionable conduct goes beyond ordinary negligence, and as such Plaintiffs requests punitive and exemplary damages are awarded against Defendant Officers in a sum which is within the jurisdictional limits of this court.

## SURVIVAL ACTION

55. Plaintiff incorporates by reference paragraphs 1 through 54 as if fully set forth herein and the Dallas Police Department General Order and violation thereto.

56. Plaintiff James Madden is the Representative for the estate of Rashad Madden.

57. Madden died as a result of the Defendants' wrongful conduct.

58. Madden would have been entitled to bring this action against the Defendants if he had lived.

59. The decedent's right of action for the wrongful conduct against the Defendants survive in favor of heirs, legal representatives, and the estate of the deceased.

60. Defendants are liable to Plaintiffs for the loss of Madden's life, pain and suffering, and the violation of his civil rights. Plaintiffs seeks compensation as set forth more specifically in the section of this Complaint entitled "Damages."

## WRONGFUL DEATH

61. Plaintiff incorporates by reference paragraphs 1 through 60 as if fully set forth herein and the Dallas Police Department General Order and violation thereto.

62. By reason of Defendants Officers' wrongful conduct of killing Madden without the threat of imminent death or serious bodily harm, Defendants are liable for damages.

63. Defendants Officers conduct that caused Madden' death was a producing cause of Maddens' injury, which resulted in the following damages: loss of a family relationship, love, support, services, emotional pain and suffering, and for their acts and infliction of emotional distress caused by the wrongful killing of Madden.

64. Plaintiffs seek compensation as set forth more specifically in the section of this Complaint entitled "Damages."

## **DAMAGES ALL DEFENDANTS**

65. Plaintiff incorporates by reference paragraphs 1 through 64 as if fully set forth herein. Defendants' acts and/or omissions were a proximate cause of the following Injuries suffered by Plaintiffs and decedent:

    a. Actual damages;

    b. Loss of affection, consortium, comfort, financial assistance, protection, affection and care;

    c. Pain and suffering and mental anguish suffered by Madden prior to his death;

    d. Mental anguish and emotional distress suffered by Plaintiffs;

    e. Loss of quality of life;

    f. Funeral and burial expenses;

    g. Loss of service;

    h. Loss of future earnings and contributions to Plaintiffs;

      i. Exemplary and punitive damages as well as costs of court;

      j. Pursuant to 42 U.S.C. §1988, and other applicable laws, Plaintiffs should be awarded reasonable attorneys' fees for the preparation and trial of this cause of action, and for its appeal, if required;

      k. Prejudgment interest; and

      l. Post judgment interest.

66.  Plaintiffs seeks unliquidated damages in an amount that is within the jurisdictional limits of the court.

## COSTS AND ATTORNEY FEES

67.  Plaintiffs incorporates by reference paragraphs 1 through 66 as if fully set forth herein. Plaintiffs are entitled to an award of attorney fees and costs under 42 U.S.C. § 1988(b). As such, Plaintiffs request the Court to award costs and attorneys' fees incurred in Plaintiffs' prosecution of this litigation.

## JOINT AND SEVERAL LIABILITY

68.  Plaintiffs incorporate by reference paragraphs 1 through 67 as if fully set forth herein and the Dallas Police Department General Order and violation thereto. Plaintiffs would show that the Defendants were jointly and severally liable for the gross negligence, which was the proximate cause of Plaintiffs' injuries.

## CONDITIONS PRECEDENT

PLAINTIFFS' SECOND AMENDED COMPLAINT

16

69. Plaintiffs reserve their rights to plead and prove the damages to which they are entitled to at the time of trial. All conditions to Plaintiffs' recovery have been performed or have occurred.

## TRIAL BY JURY

70. Plaintiffs have paid a jury fee and demands trial by jury.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to appear and answer herein; that upon final trial hereof Plaintiffs have and recover judgment from Defendants; actual damages, exemplary damages, pre-judgment interest at the legal rate; interest on said judgment at the legal rate; costs of court; and such other and further relief, both general and special, at law and in equity, to which Plaintiffs are justly entitled.

*[Signature on follow page]*

Respectfully Submitted,

By: /s/ Sadat Montgomery
SADAT MONTGOMERY
State Bar No. 24070793
**MONTGOMERY LAW, PLLC**
2777 N. Stemmons Freeway,
Suite 1525
Dallas, Texas, 75207
214 720-6090 - phone
877 669-8520 - fax
lit@montgomeryfirm.com

**ATTORNEY FOR PLAINTIFFS**

PLAINTIFFS' SECOND AMENDED COMPLAINT

17