# United States District Court
### NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| JAMES MADDEN, *Individually and as Father and Representative of the Estate of Rashad Madden*, and SHABREEKA KENNEDY, *as Next Friend of Minor Child, M.M.* | § § § § § § | |
| v. | § § | CIVIL ACTION NO. 3:21-CV-1168-S |
| JASON GRIBBON, DUDLEY NOSWORTHY, OTHER JOHN DOE DALLAS POLICE OFFICERS, and THE CITY OF DALLAS, TEXAS | § § § § § | |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Defendant City of Dallas, Texas's Motion to Dismiss Plaintiffs' Second Amended Complaint, and Brief in Support ("Motion") [ECF No. 31]. The Court has reviewed the Motion, Plaintiffs' Response to Defendant City of Dallas's Motion to Dismiss Plaintiffs' First [sic] Amended Complaint, and Brief in Support ("Response Brief") [ECF No. 32], Defendant City of Dallas's Reply Brief in Support of its Motion to Dismiss [ECF No. 35], and Plaintiffs' Second Amended Complaint [ECF No. 26] with accompanying exhibits [ECF No. 27]. For the reasons stated below, the Court **GRANTS** the Motion.

### I. BACKGROUND

Plaintiffs James Madden, individually and as the father and representative of Rashad Madden's estate, and Shabreeka Kennedy, as next friend of minor child, M.M. (collectively "Plaintiffs") filed this civil action pursuant to 42 U.S.C. § 1983 alleging the City of Dallas ("City") is liable for Defendants officers Jason Gribbon ("Gribbon"), Dudley Nosworthy, II ("Nosworthy"),

1

and other John Doe officers'[1] alleged use of excessive force in connection with the arrest of the late Rashad Madden ("Madden").[2]

According to Plaintiffs' Second Amended Complaint,[3] on May 28, 2019, at approximately 7:50 p.m., Madden walked onto an auto dealership. *Id.* ¶ 11. Madden and the business owner had a verbal confrontation. *Id.* The business owner called Dallas police and told them that Madden had a firearm pointed at his own neck and crawled under a van in the dealership parking lot. *Id.*

Officers Thomas Foster and Dylan Nelson arrived at the scene first and saw Madden under the vehicle holding a handgun. *Id.* Other officers, including Nosworthy and Gribbon, as well as Oscar Arias, Lucas Fillmore, Sean Mulrenan, Jose Rayas, arrived shortly after. *Id.* According to Plaintiffs, Madden was "in a weak and feeble position" and "was not a threat to himself or others." *Id.* ¶ 14. Plaintiffs claim Nosworthy or "another unknown officer" fired a taser at him at the same time another officer tased him. *Id.* ¶ 11. While officers simultaneously tased Madden, Gribbon fired his service weapon at or near Madden and missed him. *Id.* The officers apprehended Madden. *Id.* ¶ 12.

The officers' incident report stated that Madden had an adverse reaction to drugs while officers detained him. *Id.* First responders transported him to the hospital. *Id.* Plaintiffs assert that Madden's medical records do not indicate he had drugs in his system at the time of admission. *Id.* They allege that Madden was hospitalized for "cardiac arrest, seizure RT Pneumothorax, and other severe medical complications directly related to the tasing." *Id.* ¶ 13. Medical records show that

---

[1] Plaintiffs filed suit against "Other John Doe Police Officers" but have not amended their Complaint to identify these parties. *See* Second Am. Compl.

[2] This Court has granted summary judgment in favor of individual Defendants Gribbon and Nosworthy. *See* ECF No. 46. The Court held that the officers' use of force was objectively reasonable and did not violate Madden's clearly established rights. *Id.* The City is the only remaining Defendant in this case.

[3] Additional background facts are set forth in the Court's previous Memorandum Opinion and Order granting summary judgment for Defendants officers. *See* ECF No. 46.

Madden was tased at least twice. *Id.* Madden remained in the hospital for two months. He died on July 29, 2019. *Id.* Plaintiffs allege Madden's injuries and eventual death resulted from "excessive tasing." *Id.*

Plaintiffs bring two counts against the City. *Id.* ¶¶ 41-53 (Counts II and III). First, Plaintiffs allege that the City, under the direction of the Dallas City Council, Mayor Michael Rawlings, former Chief of Police David O. Brown, and Chief of Police Renee Hall, "acting through official policies, practices and customs, and with deliberate, callous, and conscious indifference to" Madden's constitutional rights, failed to properly train the officers who confronted Madden. *Id.* ¶ 47. Specifically, they claim the City, in line with its policies and customs:

- failed to "adequately train, supervise, or discipline its officers who commit[ted] a wrongful act or cover[ed]-up a wrongful act of[] fellow officers;"
- developed and maintained a policy of deficient training "on the proper use of deadly force and less than deadly force;"
- "violated its own policies and procedures against two or more officers tasing the same individual simultaneously;"
- did not provide proper training on "how to deal with individuals during a raid of an event similar to the event that led to Madden's death;"
- "us[ed] deadly force against Madden while [he was] in a weak, feeble, and harmless position;" and
- "us[ed] force against Madden although he caused no immediate threat." *Id.* ¶¶ 41-49.[4]

Plaintiffs state the City's failure to train and discipline was "the proximate cause of the violations of Madden'[s] constitutional rights." *Id.* ¶ 50. Plaintiffs further assert that prior to May 28, 2019, the Dallas Police Department "knew or should have known that Defendant Officers exhibited a pattern of escalating encounters with the public." *Id.* ¶ 41.

---

[4] The last two claims pertain to excessive force claims alleged against the officers, though they are restated in the allegations against the City.

3

Second, Plaintiffs allege the City failed to supervise or discipline its officers for "prior violations and resulting lack of supervision" and "in handling usual and recurring situations with which they deal." Second Am. Compl. ¶¶ 51-53. Plaintiffs further allege the City was "deliberately indifferent to the need to supervise and/or discipline employees adequately" and as a "direct and proximate result of these failures," Madden suffered damages. *Id.* Plaintiffs' header under Count 3 stated an additional "ratification claim," but Plaintiffs provide no further details on this allegation. *See id.* Plaintiffs include a survival action and wrongful death action, and seek punitive, exemplary, and other damages from the City. *Id.* ¶ 11.

To support their claims, Plaintiffs supply various documents. First, they append a series of Dallas Police Department's General Orders, including the "Response Continuum" (900.00, 901.00), Chemical Spray and Pepper Launcher System (902.00), Use of Restraining Holds (903.00), Impact Weapons (904.00), Drug Induced Psychosis/Excited Delirium (905.00), Use of Deadly Force (906.00), Electronic Control Weapon (907.00), and Response to Resistance Reporting (908.00) policies, as well as a "Linear Use-of-Force Response Continuum" chart, explaining the appropriate response to a "subject's behavior." ECF No. 27-1. Plaintiffs invoke three General Orders regarding electronic control weapons ("ECW"), or tasers, explaining that officers violated 907.04 (Use and Deployment), 907.05 (Tactical Considerations), and 907.6 (Follow Up Care). *Id.* Plaintiffs specifically claim officers violated General Order 907.04(E), which states "[t]wo or more certified ECW users will not intentionally deploy their conducted energy devices simultaneously at the same subject at the same." *Id.* In their Response Brief, Plaintiffs further allege these formal policies "on their face and in application, deprived Mr. Madden" of his rights. Resp. Br. ¶ 2.

Plaintiffs also provide the Dallas Police Department Response to Resistance 2019 Annual Report. ECF No. 27-2. The report notes that Dallas Police Department received ninety-five "inappropriate force complaints" between 2017 and May 16, 2019, in "response to resistance incidents," or incidents where officers used force beyond compliant handcuffing. *Id.* It further produces statistics regarding, *inter alia*, the types of force used, the number of officers involved, geographic information, and citizen demographics. *See id.*

## II.     LEGAL STANDARD

To defeat a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility does not require probability, but a plaintiff must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *See Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). However, the court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

In ruling on a Rule 12(b)(6) motion, the court limits its review to the face of the pleadings. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). However, the court may consider documents outside of the pleadings if they fall within certain limited categories, including "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey*, 540 F.3d at 338.

The ultimate question is whether the complaint states a valid claim when viewed in the light most favorable to the plaintiff. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002).

### III.    ANALYSIS

Plaintiffs base their theory of municipal liability under theories of (1) failure to train, discipline, or supervise, and (2) ratification.

Generally, Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). To state a claim under § 1983, a plaintiff must allege facts showing (1) he has been deprived of a right secured by the Constitution and the laws of the United States; and (2) the deprivation occurred under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005).

A municipal entity cannot be held vicariously liable under § 1983 for the individual acts of its employees. 42 U.S.C. § 1983; *see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997); *Doe on Behalf of Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). "It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)

6

(citations omitted). Therefore, to impose § 1983 liability on the City, Plaintiff must sufficiently allege "a policymaker; an official policy [or a custom]; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978)).

Specifically, for a failure to train, supervise, or discipline claim to succeed, a plaintiff must prove that (1) the City failed to train, supervise, or discipline the officers involved; (2) there is a causal connection between the alleged failure to supervise, train, or discipline and the alleged violation of the plaintiff's rights; and (3) the failure to train, supervise, or discipline constituted deliberate indifference to the plaintiff's constitutional rights. *See Peña v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018) (stating standard for failure to train or supervise); *Hunter v. City of Houston*, 564 F. Supp. 3d 517, 529 (S.D. Tex. 2021), *appeal dismissed sub nom. Hunter v. City of Houston, Texas*, No. 21-20632, 2022 WL 1782610 (5th Cir. Mar. 21, 2022) (citing *Deville v. Marcantel*, 567 F.3d 156, 171 (5th Cir. 2009)) (noting test for failure to discipline). It must be obvious that "the highly predictable consequence" of not training or supervising officers is that they "would apply force in such a way that the Fourth Amendment rights of [citizens] were at risk." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 849-850 (5th Cir. 2009).

### A.  *Constitutional Violation*

As the Court has previously granted summary judgment on all underlying constitutional violations in this case, Plaintiffs' claims against the City fail as a matter of law. A plaintiff who fails to demonstrate constitutional injury on an underlying excessive force claim may not subject the city to municipal liability based on the same event. *See City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of

constitutionally excessive force is quite beside the point."); *Martinez v. Smith*, 200 F.3d 816 (5th Cir. 1999) (holding that plaintiff could not "show any constitutional injury that is attributable to the county" because she failed to "show any constitutional violation by the individual defendants"); *Smith v. Walden*, 228 F.3d 408 (5th Cir. 2000) (holding appellant's failure to train claim against the county was not viable absent constitutional injury by individual officer); *Blair v. City of Dallas*, 666 F. App'x 337, 342 (5th Cir. 2016) (holding that dismissal of *Monell* claims against the City of Dallas were appropriate where district court properly granted summary judgment on claims against individual officers); *Cardenas v. San Antonio Police Dep't*, 417 F. App'x 401, 402 (5th Cir. 2011) (holding that because "individual defendants did not inflict any constitutional harm on Cardenas," City of San Antonio was not subject to municipal liability); *Cook v. Hopkins*, 795 F. App'x 906, 918 (5th Cir. 2019) ("[B]ecause we have found no constitutional violations on the part of the Individual Defendants, the City cannot be subjected to municipal liability").

Absent a finding of excessive force against Defendants Gribbon and Nosworthy, Plaintiffs are unable to allege a "violation of constitutional rights whose 'moving force' is the policy or custom," *Piotrowski*, 237 F.3d at 578. Nor can they claim "a causal connection between the alleged failure" to supervise, train, or discipline and the "alleged violation of the plaintiff's rights." *Peña*, 879 F.3d at 623; *Hunter*, 564 F. Supp. 3d at 529. The Court need not accept as true "unwarranted factual inferences" or "conclusory allegations" in Plaintiffs' Second Amended Complaint that contravene the evidence the Court has considered in its summary judgment ruling. *Ferrer*, 484 F.3d at 780. Plaintiffs, therefore, have failed to state a claim against the City upon which relief can be granted.

### B. *Policy*

In addition, Plaintiffs fail to state a claim for municipal liability as they do not plead sufficient facts indicating an official policy. Under the failure to train, supervise, or discipline theory, a municipal entity's failure to train, supervise, or discipline its employees to comply with constitutional requirements constitutes "official policy" that can support municipal liability if it "amounts to deliberate indifference." *City of Canton v. Harris*, 489 U.S. at 388; *Culbertson v. Lykos*, 790 F.3d 608, 625 (5th Cir. 2015).[5]

Deliberate indifference requires more than a showing of "negligence or even gross negligence"—it is a "stringent standard, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Valle v. City of Hous.*, 613 F.3d 536, 547 (5th Cir. 2010) (internal quotation omitted). A court infers deliberate indifference "either from (i) a pattern of constitutional violations or, absent proof of a pattern, from (ii) showing a single incident with proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights." *Garza v. City of Donna*, 922 F.3d 626, 637-38 (5th Cir. 2019) (internal quotation omitted). This pattern may include "'persistent and widespread . . . practices,' 'systematic maladministration' of the laws, practices that are 'permanent and well settled,' and 'deeply embedded traditional ways of carrying out . . . policy.'" *Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)).

To prove deliberate indifference, a plaintiff must demonstrate that "in light of the duties assigned to specific officers or employees[,] the need for more or different training is so obvious,

---

[5] In their Response Brief, Plaintiffs allege that Dallas Police Department General Orders 907.04 (Use and Deployment), 907.05 (Tactical Considerations), and 907.6 (Follow Up Care) are formal policies that "on their face and in application, deprived Mr. Madden" of his rights. Resp. Br. ¶ 2; *See* ECF No. 27-1 at 12-14 (policies). Plaintiffs, however, do not explain how the policies, by their text or in application, have violated any constitutional or other rights of Madden. The Court need not accept any "conclusory allegations, unwarranted factual inferences, or legal conclusions" as true. *Ferrer*, 484 F.3d at 780.

and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *Canton*, 489 U.S. at 390. When policymakers are on notice that their training program "does not prevent constitutional violations," a "new program is called for." *Brown*, 520 U.S. at 407. "[C]ontinued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." *Id.*

### i.     *Pattern*

Plaintiffs assert the City has a "longstanding record of not providing[] officers with adequate training." Second Am. Compl. ¶ 17. Plaintiffs allege that the police department had a "severe" record of failing to prevent excessive force claims, and as a result, the Dallas Police Department had to address "its uncivil resistance philosophy" by producing an annual report. *Id.* Plaintiffs contend that Chief Hall was the policymaker who had "responsibility for setting annual tasing training policies" and "knew that there were training issues which resulted in the killing of Madden[,]" but maintained and developed a deficient training program despite this knowledge. *Id., id.* ¶ 41. Further, Plaintiffs claim the Defendants officers exhibited a pattern[] of escalating encounters with the public." *Id.* ¶ 41. These allegations, without more, do not support a claim for municipal liability because Plaintiffs fail to plead facts establishing a pattern of constitutional violations.

To establish a pattern, Plaintiffs must demonstrate previous similar violations. *Est. of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005). The Fifth Circuit noted that "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Id.* (internal quotation omitted). While "the specificity required should not be exaggerated," "prior acts [must] be fairly similar to what

ultimately transpired." *Id.* In excessive force cases, the prior acts must have "involved injury to a third party." *Id.*; *See also Flanagan v. City of Dallas*, Tex., 48 F. Supp. 3d 941, 954 (N.D. Tex. 2014) (explaining that plaintiffs discussed previous incidents "in sufficient detail in their amended complaint to denote the similarities to the allegations regarding [plaintiff's] shooting, namely that the individuals involved were not provoking or resisting the police when they were shot").

In their attempt to show a pattern of the City's failure to train, supervise, or discipline, Plaintiffs attached a copy of the Department's policy regarding use of force, or the "Linear Use-of-Force Response Continuum," and Response to Resistance 2019 Annual Report. *See* ECF No. 27-1, 27-2. Plaintiffs assert "the Dallas Police Department knew or should have known that Defendant Officers exhibited a pattern[] of escalating encounters with the public." Second Am. Compl. ¶ 41. As noted, the report explains that the Dallas Police Department received 95 "inappropriate force complaints" between 2017 and May 16, 2019, in response to resistance incidents. *Id.*

While Plaintiffs highlight evidence of other instances where the City's inadequate training procedures allegedly resulted in injury to other citizens, including statistics regarding types of force used by officers, the number of officers involved in the complaints, geographic information, and citizen demographics, they fail to present evidence of the requisite similarity or specificity. *See Est. of Davis ex rel. McCully*, 406 F.3d at 383; *Flanagan*, 48 F. Supp. 3d at 954. The report does not provide adequate information to infer (i) what facts supported the "inappropriate force" complaints, (ii) whether the complaints were founded, (iii) whether the citizens involved were similarly armed or posed a threat, (iv) if police deployed tasers simultaneously or in circumvention of written policy, or (v) if the same officers involved in this case had previous complaints filed against them. Plaintiffs cite no other specific incidents to establish unconstitutional use of force,

11

including deadly force or less-than lethal force, nor any patterns of officers using tasers in a similar manner to what Plaintiffs have alleged. Nor do they specify past instances of any alleged failure of Dallas Police Department to supervise, investigate, or discipline its officers. *See Hunter*, 564 F. Supp. 3d at 529-30 (finding no deliberate indifference to the need to discipline because no evidence existed in the record "of other instances where officers weren't disciplined in response to clear constitutional violations," "nothing show[ed] that city policymakers are on actual or constructive notice of such a deficiency," and there was "a lack of evidence of an underlying constitutional violation that would require discipline") (internal quotations omitted).

Moreover, Plaintiffs did not plead facts demonstrating any failure to discipline or supervise the officers involved in the confrontation with Madden, nor any other officer involved in an inappropriate use of force complaint. They merely state that the City has not disciplined officers who committed wrongful acts, "prior violations," or were "involved in a cover-up of a crime." Second Am. Compl. ¶¶ 32, 48(a), 52; *see id.* at 42. Again, Plaintiffs assert mere "conclusory allegations" and "legal conclusions." *Ferrer*, 484 F.3d at 780.

### ii. *Single Incident*

Plaintiffs do not plead sufficient facts to meet the stringent standard for the single incident exception. As noted above, in the absence of a pattern, a plaintiff may establish deliberate indifference by showing a single incident where the potential for constitutional violations was an "obvious" or "highly predictable consequence" of a failure to train, supervise or discipline. *Brown*, 520 U.S. at 409. The Fifth Circuit stated that "[w]ithout a pattern of constitutional violations, deliberate indifference can be inferred only in narrow and extreme circumstances." *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 627 (5th Cir. 2018) (holding a claim to be facially plausible where "the risk of public officials' conducting unconstitutional searches was or should have been a 'highly predictable consequence' of the school district's decision to provide its

12

staff no training regarding the Constitution's constraints on searches"). The exception "is generally reserved for those cases in which the government actor was provided with no training whatsoever." *Peña*, 879 F.3d at 624.

In *Peterson v. City of Fort Worth, Tex.*, the plaintiff argued the City of Forth Worth was deliberately indifferent to an officer's need for training, specifically on "the risk of injuries from knee strikes." 588 F.3d at 849 (internal quotation omitted). The Fifth Circuit, considering whether the single incident exception applied, held that, absent evidence showing that the City had awareness about the "risk of injury from knee strikes" and that knee strikes had caused injury on previous occasions, the plaintiff failed to present sufficient evidence to show it was "*obvious* to the policymakers that the risk of serious injury was a highly predictable consequence" of a failure to train. *Id.* at 849 (internal quotation committed). The Fifth Circuit further noted that the single incident exception did not apply because the officers otherwise underwent extensive training on the use of force. *Id.* Nor did the exception apply to the plaintiff's failure to supervise claim. *Id.* at 850. Despite evidence that an officer failed to fill out a use of force report in violation of department policy, the department demonstrated supervision by "conducting a thorough internal affairs investigation into the incident and into a possible misstatement made in [the officer's] activity report." *Id.* The Fifth Circuit further explained that the department's "failure to reprimand one officer for an instance of faulty recordkeeping would not alone raise a genuine issue of material fact on whether the obvious and highly predictable consequence of the department's actions was that citizens' Fourth Amendment rights would be violated," and the plaintiff provided no other evidence of "inadequate supervision." *Id.* Without more, the single incident exception could not apply.

13

Plaintiffs do not plead facts to demonstrate that the City's failure to train, supervise, or discipline the officers on the use of tasing created an "obvious" or "highly predictable consequence" of constitutional injury against Madden. *Brown*, 520 U.S. at 409. First, the underlying confrontation with Madden was not the "narrow and extreme" circumstance necessary to establish deliberate indifference under the single incident exception. *Littell*, 894 F.3d at 627. The Fifth Circuit has consistently upheld the constitutionality of the use of tasers where officers face suspects who resist arrest. *See Buchanan v. Gulfport Police Dep't*, 530 F. App'x 307, 314 (5th Cir. 2013) ("[W]here a suspect resists arrest or fails to follow police orders, officers do not violate his right against excessive force by deploying their tasers to subdue him."); *Poole*, 691 F.3d at 626 (holding the use of tasers was not unreasonable where a suspect resisted arrest and officers ceased the use of the taser after "arrestee was handcuffed and subdued"); *Cloud v. Stone*, 993 F.3d 379, 384-85 (5th Cir. 2021) (holding officer's use of taser multiple times on suspect was reasonable when suspect's actions prevented officer from completing the arrest and explaining that the Fifth Circuit pays "particular attention to whether officers faced active resistance when they resorted to a taser"). Madden was armed, refused officers' commands to drop his gun and come out from underneath the van, and according to a 9-1-1 call made to police, threatened to kill himself. Second Am. Compl. ¶ 11. The officers responded by tasing Madden. *Id.* Accepting Plaintiffs' pleadings as true and viewing the facts in a light most favorable to Plaintiffs, the Court finds that the risk of constitutional injury could not have been obvious to the officers when they faced active resistance from Madden and their use of force complied with established law.

Next, Plaintiffs did not plead sufficient facts to demonstrate the City knew or had reason to know the officers would tase Madden simultaneously or act unconstitutionally during the confrontation. Nor do Plaintiffs suggest that the officers at the scene were untrained on the use of

tasers or wholly untrained. On the contrary, Plaintiffs' appended evidence demonstrates that Dallas Police Department provided use of force training, and "intentionally increased Reality Based Training opportunities for officers" in 2019 with a goal of providing officers "with enough training on commonly seen incidents" to help avoid mistakes caused by high stress situations. ECF No. 27-1 at 24. *See Peterson*, 588 F.3d at 850. Similarly, Plaintiffs relied on the internal police investigation reports to state their claims, indicating that the Dallas Police Department enforced some degree of supervision in use of force situations by requiring documentation and investigation. Second Am. Compl. ¶ 11.

Accordingly, the single incident exception, requiring a constitutional violation to be a "highly predictable consequence" of the alleged training, supervisory, and disciplinary failures, does not apply. Having found insufficient facts to support the pattern or single incident exception, the Court finds Plaintiffs failed to demonstrate a plausible claim of deliberate indifference.

### C. *Causation*

Even if Plaintiffs pleaded facts sufficient to support a finding of deliberate indifference, Plaintiffs failed to plead facts that demonstrate the alleged deficiency in training, supervision, or discipline actually caused the officers' violation of Madden's rights. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989) ("[R]espondent must still prove that the deficiency in training actually caused the police officers' indifference to her medical needs."); *Peña*, 879 F.3d at 622 ("To proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.'") (internal quotation omitted).

Here, Plaintiffs do nothing more than state the City's failure to implement adequate training or procedures, supervise, or discipline the officers "was the proximate cause" or "cause" of the

alleged violations. Second Am. Compl. ¶¶ 24, 29, 48, 50, 52(c). Plaintiffs do not plausibly link the officers' actions to training they may or may not have received, previous instances of excessive force involving these officers, inadequacy in supervision prior to or at the time of the incident, failures to discipline the officers, or any other evidence that demonstrates causation. *See Ratliff v. Aransas Cnty., Texas*, 948 F.3d 281, 285 (5th Cir. 2020), *cert. denied*, 208 L. Ed. 2d 97 (2020) ("[A]bsent specific allegations supporting a plausible causation inference," plaintiff's conclusory statement that "deficiency in training actually caused" the violation of constitutional rights "does not state a claim for relief and warrants dismissal under Rule 12(b)(6)"). As Plaintiffs wholly fail to plead facts supporting a plausible municipal liability claim against the City under these theories, their § 1983 claims warrant dismissal.

### D. *Ratification*

Plaintiffs also allege the City is liable because policymakers ratified the officers' conduct. Ratification is chargeable to the municipality when "the authorized policymakers approve a subordinate's decision and the basis for it." *Peterson*, 588 F.3d at 854 (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).

"A policymaker who defends conduct that is later shown to be unlawful does not necessarily incur liability on behalf of the municipality." *Peterson*, 588 F.3d at 848 (citation omitted); *see Zarnow v. City of Wichita Falls*, 614 F.3d 161, 169 (5th Cir. 2010) ("Good faith statements made in defending complaints against municipal employees do not demonstrate ratification."); *Davidson v. City of Stafford, Texas*, 848 F.3d 384, 395 (5th Cir. 2017), as revised (Mar. 31, 2017) (holding that a police chief did not ratify an officer's unconstitutional arrest when the police chief investigated the event and found "there was no violation from which he could discipline the officer"); *Medina v. Ortiz*, 623 F. App'x 695, 701 (5th Cir. 2015) (finding no

16

ratification of officer's alleged use of excessive force when a sheriff "accepted the officer's use of force report, refused to turn over evidence until the lawsuit was filed, and defend[ed] the deputies' actions").

The Fifth Circuit has limited ratification to "extreme factual situations." *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998). When an officer exhibits extreme "incompeten[ce] and catastrophic performance," a policymaker's silence on the conduct can amount to ratification. *Grandstaff v. City of Borger,* 767 F.2d 161, 171 (5th Cir.1985). In *Grandstaff*, the Court found that the police department approved the officer's conduct when the police department did not admit error, reprimand its employees, or discharge anyone after its officers mistook an innocent man as a fugitive, "poured their gunfire at the truck," "showed no inclination to avoid inflicting unnecessary harm upon innocent people," and killed him. *Id.* at 168, 171-72.

In the present case, Plaintiffs do not plead facts that demonstrate policymakers approved the officers' decision, upheld the basis for it, or defended the officers in any other way. The police department produced an incident report regarding the confrontation with Madden, but a department's investigation, report, and conclusions regarding an incident do not amount to ratification. *See Davidson*, 848 F.3d at 395. Nor can approval be plausibly pleaded through the policymakers' alleged silence on the conduct. Even if the Court had determined the officers violated Madden's constitutional rights, which it did not, the circumstances of the encounter between Madden and the officers do not amount to the "extreme situation" contemplated by the Fifth Circuit. Unlike the officers in *Grandstaff* who ambushed and killed an "innocent" man they mistook as a fugitive, the officers here deployed non-lethal force against an armed suspect who carried a firearm, threatened to kill himself, and repeatedly refused to obey police commands. *See*

*Grandstaff,* 767 F.2d 161. The policymakers' silence cannot amount to ratification under these facts.

## IV. CONCLUSION

For the multiple reasons stated above, the Court **GRANTS** Defendant City of Dallas, Texas's Motion to Dismiss Plaintiffs' Second Amended Complaint [ECF No. 31] and **DISMISSES** Plaintiffs' causes of action without prejudice. Plaintiffs must seek leave to file an amended complaint by September 30, 2022. If a motion for leave to file, with the proposed amended complaint attached, is not filed by this date, Plaintiffs' claims will be dismissed with prejudice.

**SO ORDERED.**

SIGNED September 20, 2022.

**KAREN GREN SCHOLER
UNITED STATES DISTRICT JUDGE**